LIZA M. WALSH
TRICIA B. O'REILLY
KATELYN O'REILLY
CONNELL FOLEY LLP
85 LIVINGSTON AVENUE
ROSELAND, NEW JERSEY 07068
(973) 535-0500

MARK FOX EVENS
MICHAEL B. RAY
BYRON L. PICKARD
NIRAV N. DESAI
STERNE, KESSLER, GOLDSTEIN & FOX PLLC
1100 NEW YORK AVE., N.W.
WASHINGTON, DC 20005
(202) 371-2600

*Attorneys for Plaintiff Power Survey, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| POWER SURVEY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>PREMIER UTILITY SERVICES, LLC,<br>AND L-3 COMMUNICATIONS HOLDINGS,<br>INC. d/b/a NARDA SAFETY TEST<br>SOLUTIONS,<br><br>Defendants. | Civil Action No. 2:13-cv-05670-FSH-MAH<br><br><br>*Electronically Filed* |

## POWER SURVEY, LLC'S MOTION TO DISMISS
## L-3 COMMUNICATIONS HOLDINGS INC.'S COUNTERCLAIMS

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT.......................................................................................................2

I.   Legal Framework for a Motion to Dismiss...................................................2

II.  The Court Should Dismiss Narda's Counterclaims. .....................................3

   A.  Narda's Three Counterclaims Should be Dismissed Because Power Survey's Letter to the NYPSC is Constitutionally Protected Speech and Immunized by the Noerr-Pennington Doctrine.....................................................................................................3

      1.  The Noerr-Pennington Doctrine Protects First Amendment Activity. ........................3

        a.  Power Survey's Conduct in Petitioning the NYPSC is Protected by the Noerr-Pennington Doctrine. .......................................................................5

          i.   The NYPSC's regulatory process falls within the Noerr-Pennington Doctrine. ..................................................................................5

          ii.  The Noerr-Pennington doctrine protects Power Survey's conduct...................7

      2.  The Sham Exception to the Noerr-Pennington Doctrine Does Not Apply and Was Not Alleged by Narda.................................................................................8

   B.  Power Survey Demonstrates That Narda Has Not Alleged the Necessary Elements of its Three Counterclaims.............................................................................11

      1.  Narda has not Alleged Facts Sufficient to Support a Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Counterclaim I)................................................11

      2.  New Jersey's Fair Trade Act § 56:4-1 Does Not Apply to Claims of False Advertising (Counterclaim II). .................................................................................12

      3.  Narda's State-Law Claims Fail to Allege that Power Survey Made Its Statements With Knowledge Of Their Falsity Or With Reckless Disregard As To Their Falsity (Counts II and III)...................................................................................13

        a.  New York law should govern Narda's state law counterclaims...........................13

          i.   There is a conflict of law. ...................................................................14

          ii.  New York law is the presumptive choice .......................................................14

          iii. New York, not New Jersey, has the most significant interest in Narda's state-law counterclaims.............................................................................15

        b.  New York's Anti-SLAPP statute covers the facts of this case............................16

        c.  Narda has not pled that Power Survey knew its statements were false or that it acted with reckless disregard as to their falsity. .................................................17

        d.  Narda has failed to allege that Power Survey made the statements in its letter to the NYPSC with malice. ........................................................................18

III. Conclusion .................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
486 U.S. 492 (1998) .................................................................................. 8, 9

*Armstrong Surgical Ctr., Inc. v. Armstrong County Mem'l Hosp.*,
185 F.3d 154 (3d Cir. 1999) ..................................................................... 8, 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................. 2, 3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................. 2, 3

*Bolger v. Youngs Drug Prods. Corp.*,
463 U.S. 60 (1983) ................................................................................. 11, 12

*Burnette v. Cheung*,
2012 WL 2178821 (D.N.J. June 13, 2012)................................................ 3, 6

*Buying For The Home LLC v. Humble Abode, LLC*,
459 F.Supp. 310 (D.N.J. 2006) .................................................................... 12

*California Motor Transport Co. v. Trucking Unlimited*,
404 U.S. 508 (1972) ...................................................................................... 4

*Chandok v. Klessig*,
632 F.3d 803 (2d Cir. 2011) ....................................................................... 17

*Cheminor Drugs, Ltd. v. Ethyl Corp.*,
168 F.3d 119 (3d Cir. 1999) ...................................................................... 3, 8

*City of Columbia v. Omni Adver., Inc.*,
499 U.S. 365 (1991) ..................................................................................... 10

*E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961) .............................................................................. *passim*

*Eli Lilly & Co. v. Roussel Corp.*,
23 F. Supp. 2d 460 (D.N.J. 1998) ......................................................... 14, 18

*Erny v. Estate of Merola*,
171 N.J. 86 (2002)........................................................................................ 13

*Facenda v. N.F.L. Films, Inc.*,
542 F.3d 1007 (3d Cir. 2008)....................................................................... 11

*Grasso-Hochegger v. Coach, Inc.*,
　2006 WL 1281422 (D.N.J. May 9, 2006)..........................................................3, 6

*Harfenes v. Sea Gate Ass'n, Inc.*,
　167 Misc. 2d 647, 647 (N.Y. Sup. Ct. 1995) ........................................................17

*In re Burlington Coat Factory Sec. Litig.*,
　114 F.3d 1410 (3d Cir. 1997)................................................................................3

*ITC Ltd. v. Punchgini, Inc.*,
　9 N.Y. 3d 467 (2007)...................................................................................14, 18

*Kasada, Inc. v. Access Capital, Inc.*,
　2004 WL 2903776 (S.D.N.Y. Dec. 14, 2004) .....................................................18

*Liberty Lake Invs. v. Magnuson*,
　12 F.3d 155 (9th Cir. 1993) ..................................................................................8

*Mayflower Transit, LLC v. Prince*,
　314 F. Supp. 2d 362 (D.N.J. 2004) .....................................................................18

*Mele v. Federal Reserve Bank of New York*,
　359 F.3d 251 (3d Cir. 2004) ..................................................................................3

*P.V. ex rel. T.V. v. Camp Jaycee*,
　197 N.J. 132 (2008)......................................................................................13, 16

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
　508 U.S. 49 (1993) ..................................................................................*passim*

*Rohm & Haas Co. v. Adco Chem. Co.*,
　689 F.2d 424 (3d Cir. 1982) ...............................................................................13

*Sarver v. Hurt Locker LLC*,
　2011 WL 11574477 (C.D. Cal. Oct. 13, 2011)....................................................16

*Schering Corp. v. First DataBank Inc.*,
　2007 WL 1176627 (N.D. Cal. 2007)....................................................................16

*T.S. Haulers, Inc. v. Kaplan*,
　295 A.D.2d 595 (N.Y. App. Div. 2002) .......................................................15, 16

*United Mine Workers of Am. v. Pennington*,
　381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965) ........................................3

*Wellness Pub. v. Barefoot*,
　2008 WL 108889 (D.N.J. Jan. 9, 2008)...............................................................14

**Statutes**

15 U.S.C. § 1125(a)(1)(B) ................................................................................ 1, 12

35 U.S.C. § 285 ...................................................................................................... 19

N.J. Stat. Ann. § 56:4-1 .................................................................................... 1, 12

N.Y. Civ. Rights § 70-a(1) ........................................................................ 14, 16, 18

N.Y. Civ. Rights § 76-a(1)(a) ................................................................................ 16

N.Y. Civ. Rights § 76-a(1)(b) ................................................................................ 17

N.Y. Civ. Rights § 76-a(2) .................................................................... 2, 14, 13, 18

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................. 2, 5, 10

## PRELIMINARY STATEMENT

Plaintiff Power Survey, an industry leader in detecting stray voltage, a serious danger to public health and safety, sued Defendant L-3 Communications Holdings, Inc. d/b/a Narda Safety Test Solutions ("Narda") for infringing three Power Survey patents that claim methods and systems for detecting stray voltage. In response to Power Survey's serious patent-infringement charges, Narda answered and counterclaimed, asserting three unfair-competition counts that all stem from a Power Survey letter to the Secretary of the New York Public Service Commission ("NYPSC") in a case the agency opened to study the need for stray-voltage testing by its regulated electric utilities. (Counterclaim, ¶¶ 8-11, Ex. A.) Power Survey moves to dismiss all three counterclaims for two reasons: (1) they are based on speech constitutionally protected under the *Noerr-Pennington* doctrine, and (2) they have been improperly pled.

The gravamen of Narda's counterclaims is that Power Survey's March 23, 2011 letter to the NYPSC contains material, false, and misleading statements about Narda's 8950/10 system, the same system Power Survey accused of infringing its three patents. (Counterclaims, ¶¶ 9-11.) Specifically, Narda alleges that Power Survey's letter violates the Federal Lanham Act statute, 15 U.S.C. § 1125(a)(1)(B), prohibiting false or misleading statements of a commercial nature (Counterclaim I); the New Jersey Fair Trade Act, N.J. Stat. Ann. § 56:4-1 (Counterclaim II); and the common law of unfair competition (Counterclaim III).

L-3's counterclaims suffer from two fatal flaws, each of which provides an independent ground for dismissal of all three counterclaims. First, Narda has missed the larger incontrovertible point that Power Survey has a constitutional right to petition the government, in this case, the NYPSC. Power Survey's letter to the NYPSC is speech protected by the First Amendment under the *Noerr-Pennington* doctrine. This Court should dismiss all three counterclaims based on Power Survey's constitutional rights.

- 1 -

Second, each of Narda's three counterclaims are improperly pled. Narda's Lanham Act counterclaim should be dismissed because is based on Power Survey's letter to the NYPSC. That letter, submitted to a government entity as part of a government proceeding, does not constitute commercial advertising, the first element of a Lanham Act cause of action (Counterclaim I). For its New Jersey Fair Trade Act count, the statute does not apply to the act of trade disparagement that Narda sets forth (Counterclaim II). Finally, Power Survey will show that Narda failed to allege that Power Survey knew its statements were false, or that it recklessly disregarded their falsity. This knowledge component is a necessary element of Narda's state-law counterclaims for two reasons. First, New York's Anti-SLAPP statute applies as a defense to Narda's Counts II & III and imposes those elements. N.Y. CIV. RIGHTS § 76-a(2)[1] New York's Anti-SLAPP statute was enacted to guard against the damaging effects caused by suits attacking another for commenting on certain matters to the government. That statute provides special protections to defendants in action involving public petition and participation. Second, both the New York and New Jersey common law require this element for trade disparagement (Counterclaim III).[2]

## ARGUMENT

### I.    Legal Framework for a Motion to Dismiss

A complaint that fails to "state a claim to relief that is plausible on its face" should be dismissed under Fed. R. Civ. P. 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For purposes of a Rule 12(b)(6) motion, all facts alleged by Narda, and all reasonable inferences therefrom, are assumed true. *See Mele v. Federal Reserve Bank of New York,* 359 F.3d 251, 253

---

[1] Power Survey below shows that New York law applies to Narda's state-law claims. The application of New York law makes sense: the alleged false statements were made to a New York government agency and were about a New York company.

[2] Narda has styled its Count III as "common law unfair competition," but it is most accurately termed "trade disparagement."

(3d Cir. 2004). However, "[a] formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Significantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal,* 550 U.S. at 678. In addition, any document attached to Narda's counterclaims are properly considered in a Rule 12(b)(6) motion. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997). The Court, also, may judicially note facts of public record in a relevant government proceeding.[3] *See See Burnette v. Cheung,* No. 11-4665, 2012 WL 2178821, at *2 (D.N.J. June 13, 2012); *Grasso-Hochegger v. Coach, Inc.*, No. 05-4311, 2006 WL 1281422, at *1 (D.N.J. May 9, 2006).

## II.   The Court Should Dismiss Narda's Counterclaims.

### A.   Narda's Three Counterclaims Should be Dismissed Because Power Survey's Letter to the NYPSC is Constitutionally Protected Speech and Immunized by the Noerr-Pennington Doctrine.

#### 1.   The Noerr-Pennington Doctrine[4] Protects First Amendment Activity.

The *Noerr-Pennington* doctrine protects rights guaranteed by the First Amendment by immunizing a party who petitions the government from tort liability arising from such petitions. *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 56 (1993); *Cheminor Drugs, Ltd. v. Ethyl Corp.,* 168 F.3d 119, 122 (3d Cir. 1999). The doctrine recognizes that "it would be destructive of [First Amendment] rights of association and of petition to hold

---

[3] The issues in Narda's counterclaims arise out of government proceedings before the NYPSC. Narda began this process when it applied to the NYPSC for certification of its sensor product on April 15, 2010. Power Survey properly responded to Narda's request with concerns about Narda's representations based on Power Survey's own testing. Narda complains about Power Survey's response, a response protected by the First Amendment.

[4] The *Noerr-Pennington* doctrine stems from two Supreme Court decisions: *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127 (1961) and *United Mine Workers of America v. Pennington,* 381 U.S. 657 (1965).

that groups with common interests may not . . . use the channels and procedures of state and federal agencies and courts to advocate their causes and points of view respecting resolution of their business and economic interests via-à-vis their competitors." *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510-11 (1972). The immunity granted under the First Amendment is broad, covering petitions to legislatures, agencies, and courts. *Id.* at 510. Petitioners are immune from liability for injuries that result from the petition itself. *E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 138 (1961) (finding that railroads were immune from liability even though plaintiffs' relationships with their customers and the public were hurt by the railroads' petitioning activities); *Prof'l Real Estate Investors*, 508 U.S. at 57-58. In determining whether the *Noerr-Pennington* doctrine applies, the determining factors is whether the accused conduct falls within the petitioning activities protected by the First Amendment. *See Prof'l Real Estate Investors,* 508 U.S. at 56. Because Power Survey's letter to the NYPSC is precisely analogous to the conduct the Supreme Court found immunized in *Noerr,* the facts of *Noerr* are instructive here.

In *Noerr* the Supreme Court found that a publicity campaign by the defendant railroads directed toward obtaining government action adverse to the plaintiff trucking companies, their competitors, was not illegal even though the activity was prompted by anti-competitive purposes. 365 U.S. at 145. The trucking companies sued the railroads, alleging that the railroads intended their publicity campaign to influence government decision-makers to act regarding economic and safety issues related to the trucking industry and that the campaign damaged the truckers' reputations with the public and their customers. *Id.* at 129-31, 142. The district court found in favor of the trucking companies, and the appellate court affirmed. *Id.* at 132-135. However, the Supreme Court reversed, finding that all of the evidence in the record dealt with the railroads'

efforts to influence the passage and enforcement of laws that addressed concerns about the costs

to the public of large trucks that used the highways. *Id.* at 142. That the railroads may have

intended their actions to, and in fact did, injure the truckers' relationships with their customers

and the public "can mean no more than that the truckers sustained some direct injury as an

incidental effect of the railroads' campaign to influence government action and that the railroads

were hopeful that this might happen." *Id.* at 143. The Supreme Court held that despite the

injuries, the conduct was still immunized from liability, as "[t]o hold that the knowing infliction

of such injury renders the campaign itself illegal would thus be tantamount to outlawing all such

campaigns." *Id.* at 143-44.

### a.    Power Survey's Conduct in Petitioning the NYPSC is Protected by the *Noerr-Pennington* Doctrine.

Narda's counterclaims omit that Narda applied to the NYPSC for a certification of its

sensor and that Power Survey submitted its letter to the NYPSC in response to Narda's

application. Plainly, Power Survey's letter was within its constitutionally protected right to

petition a government agency, precisely the conduct sanctioned by the Supreme Court in *Noerr*.

### i.    The NYPSC's regulatory process falls within the Noerr-Pennington Doctrine.

The NYPSC, a New York state government agency, regulates utility companies in New

York to ensure safe, secure, and reliable access to utility services. *See* Mission Statement, New

York State Public Service Commission, (Sept. 7, 2011),

http://www3.dps.ny.gov/W/PSCweb.nsf/ARticlesByTitle/39108B0E4BEBAB3785357687006F3

A6F?OpenDocument. In 2004, after a woman was killed by stray voltage in Manhattan, the

NYPSC opened a proceeding "to examine the safety of Consolidated Edison Company of New

York, Inc.'s electric transmission and distribution systems."[5] (Pickard Decl., Ex. 1, at 3.)[6] Later, the NYPSC broadened the scope of the proceeding to "consider the need for and appropriateness of Statewide measures to address situations related to stray voltage and other potential electrocution risks to the public." (Pickard Decl., Ex. 2, at 7.) The NYPSC solicited "comments on the efficacy of utilizing mobile stray voltage testing technology (currently only used by Con Edison) on a statewide basis." (Pickard Decl., Ex. 3, at 2.) Power Survey, among others, submitted comments. (Pickard Decl., Ex. 4.) After considering the comments, the NYPSC ordered "[a]ll utilities, with the exception of Con Edison, [to] complete an initial mobile stray voltage detection survey of their underground electric distribution systems," while recognizing that Power Survey is "the company that offers mobile stray voltage detection services." (Pickard Decl., Ex. 5, at 3, 24.)

Nearly six years after the NYPCS opened the proceeding, Narda submitted a test report to the NYPSC for the stated purpose of "obtain[ing] certification from the commission for [its] sensor," the Narda Model 8950/10. (Pickard Decl., Ex. 6, at 1.) Rochester Gas & Electric ("RGE") subsequently used the Narda Model 8950/10 in its mobile survey of Rochester, New York, detecting forty energized structures. (Pickard Decl., Ex. 7, at 15, 18.)

---

[5] This Court can consider matters of public record in deciding a motion under Fed. R. Civ. P. 12(b)(6). *See Burnette v. Cheung,* 2012 WL 2178821, at *2 (D.N.J. June 13, 2012); *Grasso-Hochegger v. Coach, Inc.,* 2006 WL 1281422, at *1 (D.N.J. May 9, 2006). The NYPSC has made the filings regarding the selection of contact voltage detection systems available online, including at http://documents.dps.ny.gov/public/MatterManagement/CaseMaster.aspx?MatterCaseNo=04-M-0159&submit=Search+by+Case+Number.

[6] Exhibits 1-9 referenced herein are described in the Declaration of Byron Pickard in Support of Power Survey's Motion to Dismiss L-3 Communications Holdings Inc.'s Counterclaims ("Pickard Decl."), and are cited in the form "Pickard Decl. Ex. X."

Power Survey responded to Narda's submission, advising the NYPSC of its concerns about the Narda certification application and the results of RGE's survey using the Narda 8950/10, submitting the letter that is now the basis for Narda's counterclaims. (Counterclaim, Ex. A, at 1.) "[I]n the interest of public safety," Power Survey advised the NYPSC that "[u]sing the Narda device, unfortunately, a huge number of real pedestrian hazards went undetected, placing the public at risk." (Counterclaims, Ex. A, at 1.) Power Survey reported that it conducted a head-to-head comparison of the RGE survey using its own SVD 2000 detection system and found "*251 energized structures, some of which were energized at full line voltage.*" (Counterclaims, Ex. A, at 1.) This compares to just forty structures that RGE found in its survey using the Narda 8950/10. (Pickard Decl., Ex. 7, at 18.) Power Survey's letter then offered an explanation for why the Narda 8950/10 system missed so many energized structures including responding specifically to Narda's application for NYPSC certification. Power Survey concluded by asking the Commission to deny Narda's application for certification: "We hope that the Commission will review the evidence and act in the public's interest; block the use of the Narda device . . . ." (Counterclaims, Ex. A, at 9.)

### ii. The *Noerr-Pennington* doctrine protects Power Survey's conduct.

Narda alleges that Power Survey's actions informing the NYPSC of the potential safety issues related to the use of the Narda Model 8950/10 have harmed Narda's business, sales, reputation, and goodwill. (Counterclaims ¶¶ 17-18, 22.) Whether that allegation is true or not, the act of writing a letter to the NYPSC is an accepted form of petitioning the NYPSC to influence its legislative process. *See Part 3: Procedures Applicable to All Proceedings,* New York Public Service Commission § 3.5 (March 9, 2011), *available at* http://www3.dps.ny.gov/N/nycrr16.nsf/364bc4bd8005c8b48525702d004a1baf/dfa7a8cc4f8a722

- 7 -

d85325fc7004cfb97/$FILE/3-o.pdf. Even if Narda's allegations that Power Survey intended its letter to harm, or actually did harm Narda are true, that harm is the result of Power Survey's government petition urging the NYPSC to interpret and enforce its rules to promote the public's safety. As in *Noerr,* holding Power Survey liable for its petition would "render[] the campaign itself illegal [and] be tantamount to outlawing all such campaigns," a result rejected by the Supreme Court. 365 U.S. at 143-44.

Narda further alleges that Power Survey disseminated the March 23 letter to Narda's potential customers, although Narda hedges this allegation with the tenuous "on information and belief" with no factual support for the conclusion, including no attempt to identify any such Narda customers. (Counterclaim ¶ 12.) Even if Narda had pled facts that Power Survey disseminated its letter to the public at large, including Narda's customers, the *Noerr-Pennington* doctrine specifically protects that conduct too: in *Noerr*, the railroads publically disseminated circulars, speeches, newspaper articles, editorials, magazine articles, and other speech, and the Supreme Court held that these activities—a publicity campaign not directed solely to the government entity—were still protected speech as part of the railroads' campaign to influence the government's enforcement of laws. 365 U.S. at 142, 145. Thus, just as in *Noerr,* Power Survey's attempts to petition the NYPSC and any dissemination of that information to the public are immunized by the First Amendment.

### 2.    The Sham Exception to the Noerr-Pennington Doctrine Does Not Apply and Was Not Alleged by Narda.

The Third Circuit recognizes a single exception to *Noerr-Pennington* immunity[7]: immunity is not available for petitioners that engage in "sham" activities, defined as "'not

---

[7] Other circuits have recognized a "fraud exception" to the *Noerr-Pennington* Doctrine, which applies where the petition is shown to be deceptive. *See, e.g., Liberty Lake Invs. v.*

genuinely aimed at procuring favorable government action,' as opposed to 'a valid effort to influence government action.'" *Prof'l Real Estate Investors,* 508 U.S. at 58, 60-61 (quoting *Allied Tube & Conduit Corp. v. Indian Head, Inc.,* 486 U.S. 492, 500 n.4 (1998)). The sham exception requires plaintiffs to show two things: (i) the petition was objectively baseless such that no reasonable petitioner could realistically expect success on the merits; and (ii) the petitioner's intent was to interfere directly with the business relationships of a competitor through the use of the governmental process itself—and not the actual outcome of the process. *Prof'l Real Estate Investors,* 508 U.S. at 60; *Armstrong Surgical Center, Inc. v. Armstrong County Memorial Hosp.,* 185 F.3d 154, 158 n.2 (3d Cir. 1999). The Supreme Court has "explicitly observed that a successful 'effort to influence government action certainly cannot be characterized as a sham.'" *Prof'l Real Estate Investors,* 508 U.S. at 58 (quoting *Allied Tube,* 486 U.S. at 502). "[E]vidence of anticompetitive intent or purpose alone cannot transform otherwise legitimate activity into a sham." *Id.* at 59. Narda has not alleged that Power Survey's petition to the NYPSC was a sham, nor can it.

As a matter of law, Power Survey's successful efforts to influence the NYPSC's actions could not have been a sham. Just as Narda intended that its submission to the NYPSC would influence the NYPSC to certify the Narda Model 8950/10, Power Survey's letter explicitly states an intent to influence the NYPSC to prevent that certification. Power Survey's effort succeeded because the NYPSC did not give Narda the certification it sought. Indeed, the NYPSC found the issue of whether the Narda Model 8950/10 could be used to comply with the mobile stray voltage testing requirements was moot because all utility companies had decided not to use the

---

*Magnuson,* 12 F.3d 155 (9th Cir. 1993). The Third Circuit has rejected the fraud exception. *See Armstrong Surgical Ctr., Inc. v. Armstrong County Mem'l Hosp.,* 185 F.3d 154, 169 (3d Cir. 1999); *Cheminor;* 168 F.3d at 123.

Narda Model 8950/10 at that time. (Pickard Decl., Ex. 8, at 7-8.) Had Power Survey's petition been objectively meritless—with no realistic chance of causing the NYPSC to deny the certification Narda sought—the NYPSC would have certified the Narda 8950/10 as a device that could be used to comply with the testing requirements, as Narda had requested.

Even if Narda somehow could allege facts that would satisfy the first prong of the sham exception test, Narda still has not pled, and cannot plead, facts that meet the second prong of the test. To meet the second prong, Narda must plead that Power Survey did not intend to achieve an outcome by engaging in the process, seeking, instead, simply to interfere directly with Narda's business relationships through the use of the governmental process itself. *Id.* at 60-61. "A classic example is the filing of frivolous objections to the license application of a competitor, with no expectation of achieving denial of the license but simply in order to impose expense and delay." *City of Columbia v. Omni Adver., Inc.*, 499 U.S. 365, 380 (1991). In this case, Narda does not allege that Power Survey had no goal to achieve through the use of the governmental process. Narda merely alleges that Power Survey's actions were done "willfully and in bad faith," a conclusion unsupported by Narda's factual allegations. (Counterclaims ¶ 20.) But Narda's allegations are not enough to exempt Power Survey's conduct from *Noerr-Pennington* immunity. *See Prof'l Real Estate Investors,* 508 U.S. at 57-58 (holding that *Noerr-Pennington* immunizes "a concerted effort to influence public officials regardless of intent or purpose"); *Noerr,* 365 U.S. at 138 (holding that the right of petition "cannot properly be made to depend upon [petitioners'] intent in doing so").

Because Narda fails to allege either element of the sham exception, it cannot now rely upon that exception to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). And because Narda fails to allege any conduct not immunized from liability as a matter of law, this Court

should grant Power Survey's motion to dismiss all three counterclaims under Fed. R. Civ. P. 12(b)(6).

### B.    Power Survey Demonstrates That Narda Has Not Alleged the Necessary Elements of its Three Counterclaims.

#### 1.    Narda has not Alleged Facts Sufficient to Support a Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Counterclaim I).

For purposes of this motion to dismiss, Power Survey contends that Narda has not satisfied the first element of its Lanham Act cause of action: that Power Survey engaged in commercial advertising speech.[8]

Narda's conclusory allegation that "Power Survey's dissemination of the March 23, 2011 Letter . . . constitute[s] commercial speech, advertisement, and/or promotion under the Lanham Act" does not plausibly support a finding that Power Survey's accused speech is commercial. (Counterclaim ¶ 15). First, Power Survey already has demonstrated that Power Survey's speech, far from being commercial, was protected speech necessary to petition the government to protect the public safety. Second, Power Survey's actions do not constitute commercial speech because such speech is that which "does no more than propose a commercial transaction," and Power Survey's petition to the NYPSC does not propose a commercial transaction. *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1017 (3d Cir. 2008); *Bolger v. Youngs Drug Prods. Corp.,* 463 U.S.

---

[8] To establish the basis for its Lanham Act counterclaim, Narda uses conclusory statements that merely parrot the five legal elements of that cause of action: (i) that Power Survey's letter to the NYPSC constitutes commercial speech, advertisement of promotion (Counterclaim, ¶ 15); (ii) that the letter deceived Narda's customers (*Id.*, ¶ 18); (iii) that the deception was material (*Id.*, ¶ 19); (iv) that the products travel in interstate commerce (*Id.*, ¶ 21); and (v) that Narda was injured (*id.*, ¶¶ 22, 25, 28). 15 U.S.C. § 1125(a)(1)(B). Narda's counterclaims highlight how truly threadbare these statements are when the statements are read together with Counterclaim ¶ 10, where Narda asserts that the "Letter contains numerous material, false, and misleading statements" and then quotes from portions of Power Survey's March 23 letter without showing why any of the quoted statements are material, false, or misleading.

60, 66 (1983). The Supreme Court's decision in *Bolger* is instructive of whether Power Survey's conduct constitutes commercial speech. In *Bolger*, the Supreme Court considered three factors to determine whether speech was commercial, though it did not create a dispositive test: (i) that the speech was concededly an advertisement; (ii) that the speech promoted the speaker's specific products; and (iii) that the defendant had an economic interest for making the speech. *Bolger*, 463 U.S. at 66. Applying these factors to this case demonstrates that Power Survey's letter was not commercial speech. First, the letter was not an advertisement for any Power Survey products. Second, Power Survey did not promote any Power Survey product, merely noting that the SVD 2000 is the field's established benchmark. Finally, even should Narda argue that Power Survey had an economic interest in submitting its letter to the NYPSC, "the fact that [the speaker] has an economic motivation for [the speech] would clearly be insufficient by itself to turn the materials into commercial speech." *Id.* at 67. That Power Survey repeated the contents of the letter to Narda's customers, as alleged by Narda, does not constitute commercial speech for the same reasons. Thus, Narda has failed to state a claim under § 1125(a)(1)(B) and its first counterclaim should be dismissed.

### 2. New Jersey's Fair Trade Act § 56:4-1 Does Not Apply to Claims of False Advertising (Counterclaim II).

The Court also should dismiss Narda's Count II under New Jersey's Fair Trade Act because that cause of action is directed to claims of trademark appropriation, not to the alleged trade disparagement set forth in Narda's pleading. To prove a violation under N.J. Stat. Ann. § 56:4-1, the plaintiff must allege that: (i) a mark at issue is valid and legally protectable; (ii) the mark is owned by the plaintiff; (iii) the defendant used the mark in commerce on or in connection with any goods or services or container for goods; and (iv) the use was in a manner likely to create confusion concerning the origin of the goods or services. *Buying For The Home*

*LLC v. Humble Abode, LLC,* 459 F.Supp. 310, 318 (D.N.J. 2006). Narda has pled none of these elements, and the Court should dismiss its Fair Trade Act (Counterclaim II).

> **3.  Narda's State-Law Claims Fail to Allege that Power Survey Made Its Statements With Knowledge Of Their Falsity Or With Reckless Disregard As To Their Falsity (Counts II and III).**

The Court should dismiss Narda's counterclaims II and III because it has failed to plead that Power Survey knew its statements in the letter were false or that it recklessly disregarded whether its statements were false. This element is required for both of Narda's state-law counterclaims under New York's Anti-SLAPP statute, which applies here. N.Y. CIV. RIGHTS § 76-a(2). And, both New York and New Jersey common law require this same element in common law claims for trade disparagement (Count III).

Power Survey will show (i) that New York law should apply to Narda's state-law counterclaims (Counts II & III); (ii) that New York's Anti-SLAPP statute applies to the facts Narda has alleged; and (iii) that Narda's counterclaims fail to allege the requisite Power Survey knowledge. Finally, in the alternative, if New York's Anti-SLAPP statute does not apply, Power Survey will show that both New York and New Jersey common law impose the same knowledge requirement for Narda's Count III, which Narda failed to allege.

> **a.  New York law should govern Narda's state law counterclaims.**

This court should apply New Jersey's choice of law analysis when deciding choice-of-law issues as to any state-law claim before it. *Rohm and Haas Co. v. Adco Chem. Co.*, 689 F.2d 424, 429 (3d Cir. 1982). In New Jersey, choice-of-law determinations are made on an issue-by-issue basis. *Erny v. Estate of Merola*, 171 N.J. 86, 94-95 (2002). New Jersey applies the Restatement (Second) of Conflict of Laws' most-significant-relationship test. *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 142-43 (2008). Under that approach the court's first determination is whether there is a choice-of-law conflict. *Id.* at 143. Then the court looks to the Second

Restatement for any provision that provides a presumptive choice of law for the issues. *Id.* at 144. Once the presumptively applicable choice of law is identified, that choice is tested against the factors outlined in section 145 of the Second Restatement to determine the state with the most significant interest including (i) the place where the injury occurred; (ii) the place where the conduct causing the injury occurred; (iii) where the parties are located; and (iv) the place where the parties relationship is centered. *Id.* at 145-47.

### i.       There is a conflict of law.

There is little question that there is a conflict of law here. New York has an Anti-SLAPP statute while New Jersey does not. And New York's Anti-SLAPP statute provides important substantive rights to Power Survey. For example, if applied, it would require Narda to prove by clear and convincing evidence that Power Survey's statements were knowingly false or made with reckless disregard as to their falsity. N.Y. CIV. RIGHTS § 76-a(2). It also provides a substantive cause of action for Power Survey to recover fees and costs and damages from Narda. N.Y. CIV. RIGHTS § 70-a(1).

### ii.      New York law is the presumptive choice

The gist of Narda's state-law counterclaims is injurious falsehood—that Power Survey's false statements about Narda's product have harmed Narda.[9] Section 151 of the Second

---

[9] Narda has pled common law unfair competition, but unfair competition under New Jersey common law is inapplicable here. *Wellness Pub. v. Barefoot*, 2008 WL 108889, at *20 (D.N.J. Jan. 9, 2008) ("A prerequisite to an act of unfair competition is that one party misappropriates another's property . . . ."); *See also Eli Lilly and Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 494 (D.N.J. 1998) ("[U]nder New Jersey common law, unfair competition encompasses two separate torts: (1) passing off one's goods or services as those of another; and (2) unprivileged imitation."). Similarly, unfair competition under New York common law is also inapplicable. *ITC Ltd. v. Punchgini, Inc.*, 9 N.Y. 3d 467, 476 (2007) ("We have long recognized two theories of common-law unfair competition: palming off and misappropriation."). While Narda still fails to plead all of the necessary elements, its allegations most closely resemble injurious falsehood, specifically trade disparagement.

Restatement provides that suits for injurious falsehood follow the rules set forth by Section 149 and 150 of the Second Restatement, which apply to defamation. In turn, Section 149 provides that New York law should apply because it is the place where publication of Power Survey's letter occurred—it was received at the NYPSC. Section 150 governs cases of multistate defamation and therefore does not apply because Narda does not allege that the letter was published anywhere outside of New York. But that is of no moment because Section 150 would also direct the presumptive choice of New York law because it provides that multistate defamation suits should apply the law of the defamed company's principal place of business— here, New York. (Counterclaim, ¶ 1.)

Therefore, New York law is the presumptive choice of applicable law.

### iii.   New York, not New Jersey, has the most significant interest in Narda's state-law counterclaims.

Finally, the Court should consider whether New Jersey has a more significant interest in this dispute than New York sufficient to overcome the presumptive choice of New York law. Again, this analytical step points strongly to applying New York law. First, New York has a strong public-policy interest in this dispute. The speech at issue was directed to a New York government entity. And the legislative intent of the New York Anti-SLAPP statute is to mitigate the "damaging effect [a SLAPP suit] can have on citizen participation in matters of public importance, even when the action lacks a substantial basis." *T.S. Haulers, Inc. v. Kaplan*, 295 A.D.2d 595, 596 (2nd Dept. 2002). The specific factors of Section 145 confirm this conclusion. Narda is allegedly injured in New York, its corporate home. The place of the injurious conduct is New York, where Power Survey allegedly published the letter. Power Survey is in New Jersey and Narda is domiciled in New York, so the locations of the parties is a neutral factor. And the parties relationship with respect to Power Survey's letter is centered in New York before the

NYPSC, the forum in which Narda's and Power Survey's communications about the Narda 8950/10 were submitted.

At least one court has followed New Jersey's choice of law analysis to apply another state's anti-SLAPP statute. *also Sarver v. Hurt Locker LLC*, 2011 WL 11574477, at *2-3 (C.D. Cal. Oct. 13, 2011). And the only case to apply New Jersey choice-of-law rules to reject application of another state's anti-SLAPP statute does not apply here. *See Schering Corp. v. First DataBank Inc*., 2007 WL 1176627, at *8 (N.D. Cal. 2007). *Schering* was decided before the New Jersey Supreme Court clarified its choice-of-law approach and the decision did not follow the analysis provided in *P.V. ex rel. Id.*; *P.V. ex rel.*, 197 N.J. 132, 142-43 (2008). What is more, the *Schering* case relied on the fact that California's Anti-SLAPP statute was enacted to serve the policy of alleviating California's—but not other states'—courts from the burden of frivolous suits. *Schering*, 2007 WL 1176627, at *5-6. The policy underlying New York's Anti-SLAPP statute does not suffer this same issue; the New York Anti-SLAPP statute was enacted to ensure public participation before New York government agencies, a purpose served by applying the statute here. *T.S. Haulers*, 295 A.D.2d at 596.

> **b.    New York's Anti-SLAPP statute covers the facts of this case.**

To fall under the protections of New York's Anti-SLAPP statutes the following must be present: (i) a claim, including a counterclaim (ii) brought by a public applicant or permittee (iii) materially related to defendants' efforts to comment on, rule on, challenge or oppose such application or permission. N.Y. Civ. Rights §§ 70-a(1), 76-a(1)(a).

All of these elements are present here. First, Narda is a public applicant for certification from the NYPSC. According to the public record of the government proceeding, on April 15, 2010, Narda applied to the NYPSC prefacing its application: "The purpose of the test was to demonstrate a sensor that can assist compliance with the Commission's requirements *and to*

*obtain certification from the commission for this sensor*." (Pickard Decl., Ex. 6, at 1) (emphasis added). Narda may counter that it is not a covered permittee because the Commission responded to Narda application, stating that the application was moot and that "the Commission does not approve the specific equipment that may be used to conduct testing pursuant to the Electric Safety Standards." (Pickard Decl., Ex. 8, at 7 n.8.) But that argument would fail. First, the plain language of the statute provides that a permittee is any who "has *applied for*…a certificate or other entitlement." N.Y. Civ. Rights § 76-a(1)(b). That is, Narda's own words establish it applied to the NYPSC for certification (i.e. a certificate or entitlement) to have its system used for mobile testing in New York.[10]

Second, there is no question that Narda has filed a counterclaim against Power Survey.

Third, there can be no dispute that Narda's counterclaims are materially related to Power Survey's efforts to comment on, rule on, challenge or oppose such application or permission. Narda's counterclaims are based entirely on Power Survey's comments responding specifically to Narda's application to the NYPSC.

> **c.    Narda has not pled that Power Survey knew its statements were false or that it acted with reckless disregard as to their falsity.**

In a suit covered by New York's Anti-SLAPP statute, a plaintiff cannot prevail without showing the defendant made its statements with knowledge they were false or with reckless disregard as to their falsity. N.Y. Civ. Rights § 76-a(2). Narda simply has not pled facts showing

---

[10] Such a contention would be belied by the fact that Premier Utility later sought the same certification for its MCVD system, now known to be the Narda 8950/10. (Ex. 9, at 1.) This request for certification is publically available at http://documents.dps.ny.gov/public/Common/ViewDoc.aspx?DocRefId=%7bF3ABF156-C6EE-4C83-8349-DEE05568ED64%7d.

Power Survey had this required knowledge, nor even parroted the conclusory statement that Power Survey had the necessary knowledge.

> **d.      Narda has failed to allege that Power Survey made the statements in its letter to the NYPSC with malice.**

As noted above in footnote 9, New Jersey's and New York's common law tort for unfair competition apply only to passing off and trademark misappropriation, the facts of which are not pled here. *Wellness Pub.*, 2008 WL 108889, at *20; *Eli Lilly*, 23 F.Supp.2d at 494; *Punchgini, Inc.*, 9 N.Y. 3d at 476. However, even if Narda's common-law count is broadly construed to have alleged trade disparagement, it still fails. To adequately plead its common-law claims, either under the New York or New Jersey law, Narda must allege that Power's Survey's false statements were knowingly false or made with reckless disregard as to their falsity. See *Mayflower Transit, L.L.C. v. Prince*, 314 F. Supp. 2d 362, 378 (D.N.J. 2004); *Kasada, Inc. v. Access Capital, Inc*., 2004 WL 2903776, at *11 (S.D.N.Y. Dec. 14, 2004). As shown above, Narda has simply failed to plead that Power Survey's statements were false or it acted with reckless disregard as to their falsity. For this additional reason, the common-law count should be dismissed.

## III.     Conclusion

Plaintiff and Counterclaim Defendant Power Survey requests that this Court dismiss Narda's counterclaims against Power Survey because Power Survey's conduct in petitioning the NYPSC is protected by the First Amendment and the *Noerr-Pennington* doctrine. Further, Narda has not properly pled the grounds for a Lanham Act cause of action, a New Jersey Fair Trade Act cause of action, nor a New Jersey Common Law cause of action. Power Survey also asks the Court to grant such other and further relief as this Court deems just and proper, including an

award of reasonable attorneys' fees and costs pursuant to 35 U.S.C. § 285 and as otherwise
permitted by law.


Dated: February 27, 2014                       Respectfully submitted,

                                               By: s/Liza M. Walsh
                                                   LIZA M. WALSH
                                                   TRICIA B. O'REILLY
                                                   KATELYN O'REILLY
                                                   CONNELL FOLEY LLP
                                                   85 LIVINGSTON AVENUE
                                                   ROSELAND, NEW JERSEY 07068
                                                   (973) 535-0500

                                                   MARK FOX EVENS
                                                   MICHAEL B. RAY
                                                   BYRON L. PICKARD
                                                   NIRAV N. DESAI
                                                   STERNE, KESSLER, GOLDSTEIN & FOX PLLC
                                                   1100 NEW YORK AVE., N.W.
                                                   WASHINGTON, DC 20005
                                                   (202) 371-2600


                                               *Attorneys for Plaintiff Power Survey. LLC*